IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-03047-CNS-GPG

IRA B. DOLE and SARAH M. DOLE,

    Plaintiffs,

v.

JOE GREENE,
TERRENCE DANIEL O'BRIEN,
GREENE MR LAND DEVELOPMENT, LLC,
RANDI KELLEY,
ANTHONY GORDON GISOLDI,
DANIEL NICHOLAS GISOLDI,
KEVIN O'BRIEN, and
all Unknown Persons Who Claim Any Interest in the Subject Matter of this Action,

    Defendants.

## ORDER

Before the Court is Plaintiff Ira B. Dole and Sarah M. Dole's Motion for Issuance of Temporary Restraining Order (*See* ECF No. 63-1). The Court held a preliminary injunction hearing on September 28 and 29, 2022. For the following reasons, the Court GRANTS the Doles' preliminary injunction motion and issues a preliminary injunction against Defendants Joe Greene, Terrence O'Brien, Greene MR Land Development, LLC, Anthony Gisoldi, Daniel Gisoldi, Kevin O'Brien, and Randi Kelly (the "Defendants").

## I.  Background and Procedural History[1]

This civil action, removed from Colorado state court (*see* ECF No. 1), arises from the Doles' use of a road to enter their ranch property. This road[2] crosses property owned by Defendants.[3] The parties dispute whether the Doles have a permissive or prescriptive easement to cross the Road for access to their property.

In 1939, Alva White acquired the land on which the ranch property sits from the United States government (Exhibit 5). Alva White and his wife, Margaret White, sold the property to their son, Marvin White, and his wife, Billie, in 1972 (*See, e.g.*, Exhibit 11). Alva and Margaret White owned the ranch property from 1972 through 2019. The Doles purchased the ranch property from Marvin and Billie White in 2019 (Exhibit 17). Sarah M. Dole is Billie White's granddaughter.

Sharron Klaseen was raised by Alva and Margaret White.[4] Through 1943 and 1955, Ms. Klaseen used the Road to access the White's ranch. According to Ms. Klaseen, during this period

---

[1] The Court draws its Background predominantly from witness testimony and exhibits presented during the preliminary injunction hearing. Numbered exhibits refer to exhibits admitted into evidence during the preliminary injunction hearing.

[2] At the preliminary injunction hearing, the Doles referred to the road as the "disputed road," and Defendants referred to the road as "Thunder Ridge Road." Throughout this Order, the Court refers to this road as "the Road."

[3] The Court denied Defendant Randi Kelly's Motion to Dismiss as a party in this action (ECF No. 61) on October 3, 2022 (ECF No. 90).

[4] The Court notes that, at the time of this Order, no party has requested official transcripts of the preliminary injunction hearing. Given the time and expense involved in the court reporters' preparation of hearing transcripts, the Court declines to sua sponte order the preparation and docketing of official transcripts from the hearing's court reporters. As the Court stated at the hearing, given the length of time the preliminary injunction issue has awaited resolution in federal court and to best serve the parties, it seeks to resolve the Doles' preliminary injunction motion as quickly as possible. Accordingly, in issuing its Order the Court relies on unofficial hearing transcripts when referencing witnesses' testimony.

a gate was placed at the boundary of the Road and a Forest Service Road. The gate was used to prohibit cattle from going onto Forest Service property. Ms. Klaseen testified that she never asked for permission from anyone to use the Road to access the ranch property. Ms. Klaseen further testified that Marvin White placed a lock on the "big wooden pole gate" sometime in the early 1970s, and that she had a key to the gate. The "key number" for the gate was "0909", and Marvin White's other family members had a key to the gate. From 1978 through 1985 Ms. Klaseen was the secretary of the Overland Ditch Company. Marvin White was on the board of the Overland Ditch Company, which manages a ditch in the area, and the Overland Ditch Company used the "0909" lock that Marvin White installed to "go up to the ditch." Members of the White family are buried on the ranch property.

Billie White married Marvin White in 1968, and first visited the ranch property that same year. Billie White testified that, when she first visited the ranch property, there was not a lock placed at the gate between the Forest Service boundary and the beginning of the Roatcap property. Like Ms. Klaseen, Billie White testified that Marvin White placed the "0909" lock on the gate. The "0909" key was also used for a gas tank located on the yard of the Whites' property. After purchasing the ranch, Marvin and Billie White accessed their ranch property using the Road. They never asked for permission to use the Road to access their property, and no one ever stopped the Whites from using the Road to access their property. The Whites kept approximately 150-250 cattle on their ranch property. Ms. White testified she was "pretty sure" Marvin White gave the O'Briens a key to the "0909" lock he installed on the gate; the O'Briens later put a combination lock on the gate themselves.

In 1999, the Whites built a new cabin on their ranch property, and began constructing a high fence around their property. Ms. White lived on the ranch property throughout the summer seasons after the Whites built their new cabin. In 2000, the Whites applied for an Alternative Livestock Farm license to have domesticated elk on their property, which allowed the Whites to conduct elk hunts (Exhibit 12). A Brand Commissioner from the Colorado Department of Agriculture stated the Whites had an Alternative Livestock Facility license "since July 14, 2000" (Exhibit 30). The Whites had domestic elk on the ranch property since 1988, and had approximately 250 elk on the property in 2000; they used the Road to transport the elk to their ranch property. After submitting the Alternative Livestock Farm license application, the Whites started hosting commercial elk hunts on their property in 2000 (Exhibit 32).

The Whites' commercial elk hunting operation expanded from 2000 to 2019 when the Whites sold the ranch property to the Doles. The Doles purchased the ranch property from the Whites believing they had an easement to access their ranch property. Mr. Dole testified that prior to 2019, no Defendant interfered with the elk hunts that occurred on the ranch property. Mr. Dole further testified that other roads leading to the ranch property are not viable options for hauling cattle or elk to and from the ranch property.

Terrence O'Brien, the owner of neighboring property to the Doles' ranch property, testified that he recalled the first elk hunt occurred on the ranch when the Whites owned it in 2003. In a 2019 e-mail to several Defendants, Mr. O'Brien described Marvin White—"now Burt Dole"—as a "property owner [with a] historical easement" (Exhibit 24). Mr. O'Brien did not complain about the elk hunts conducted on the ranch property as overburdening the easement the Doles claimed across the Road until 2021. Mr. O'Brien e-mailed Joe Greene in June 2021, stating "the White

4

hunting traffic has always been a problem for me" and that he "[went] back and forth on if the historical easement should allow certain activities" (Exhibit 34). In June 2021, Defendants placed a sign on the gate stating the Doles did not have access to the Road (Exhibit 25). Joe Greene told Mr. Dole he did not have a right to use the Road. According to Mr. Dole, Mr. Greene threated his cattle with an AR-15 rifle. In August 2021, Mr. O'Brien e-mailed the Doles, stating in part that there was a "lot to fill [them] in about historical problems" with Marvin White's "easement violations" (Exhibit 27).

The Doles initiated this action in the Colorado District Court of Delta County in August 2021, contending in relevant part that they had a prescriptive easement across the Road (ECF No. 1 at 2, 12 at 9). Defendants removed this action to federal court in November 2021 on the grounds that the Doles' First Amended Complaint, filed in state court, alleged a removable claim arising under a federal statute (ECF No. 1 at 2). After an unsuccessful attempt to settle this action, Defendants filed a Motion to Dissolve the Ex Parte Temporary Restraining Order (ECF No. 63) entered by the state court judge in November 2021 (ECF No. 5). The Magistrate Judge denied Defendants' Motion to Dissolve the Ex Parte Temporary Restraining Order (ECF No. 73). After Defendants filed their fully briefed Motion to Re-Set Preliminary Injunction Motion for Hearing (ECF No. 75), the Court held a telephone status conference on September 7, 2022 (ECF No. 81), and held a two-day preliminary injunction hearing on September 28 and 29, 2022.

## II.     Legal Standard

In this removed civil action, the standards governing preliminary injunctions under federal law apply. *See, e.g.*, *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974); *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1256

(10th Cir. 2005) (applying federal standard for preliminary injunctions to civil action removed under 28 U.S.C. § 1441).

A preliminary injunction is an "extraordinary remedy." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation omitted). To prevail on a preliminary injunction motion, the movant bears the burden of showing four factors weigh in their favor: (1) they are substantially likely to succeed on the merits; (2) they will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs the injury the injunction would cause the opposing party; and (4) the injunction would not adversely affect the public interest. *See Beltronics USA, Inc. v. Midwest Inventory Distribution*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009) (citation omitted). "An injunction can issue only if each factor is established." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1277 (10th Cir. 2022) (citation omitted).

### III.    Analysis

Having reviewed the preliminary injunction exhibits, testimony, the parties' arguments, and relevant legal authority, the Court finds that the Doles have met their burden of showing all preliminary injunction factors weigh in their favor.

#### A.  Likelihood of Success on the Merits

The Doles contend they are likely to succeed on the merits of showing they have a prescriptive easement because the Whites and Doles have openly and adversely used the Road for over eighteen years. Defendants argue the Doles' use of the Road was permissive, and therefore they do not have a prescriptive easement across the road to access their ranch property. The Court agrees with the Doles.

The plaintiff bears the burden of showing the alleged easement is a prescriptive easement. *See, e.g.*, *Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n, Inc.*, 489 P.3d 735, 741 (Colo. 2021). To meet this burden, a plaintiff must show: (1) the prescriptive use is "open and notorious"; (2) the use was "continuous" for at least eighteen years; and (3) use of the alleged easement is "adverse." *See LR Smith Invs., LLC v. Butler*, 378 P.3d 743, 746 (Colo. App. 2014) (citation omitted). If the plaintiff shows the use of another's property was open and notorious for the eighteen-year period, they are entitled to a presumption that their use was adverse. *See, e.g.*, *id.* Permissive use during any or all the eighteen-year period "defeats a claim of adverse use, and therefore precludes the acquisition of the prescriptive easement." *Brown v. Faatz*, 197 P.3d 245, 249 (Colo. App. 2008) (citation omitted); *see also Lo Viento*, 489 P.3d at 741 (concluding that for the use of land to be adverse the use must be "without permission" of the property owner (citation omitted)).

First, the Doles have shown that their use of the alleged easement was open and notorious.[5] To satisfy this element, a plaintiff's use must be "sufficiently obvious" to appraise the defendant that the plaintiff was using the burdened land so that the defendant-landowner could object to the plaintiff's use. *See Weisiger v. Harbour*, 62 P.3d 1069, 1073 (Colo. App. 2002). The Doles' use of the alleged easement, as well as their predecessors' use of the easement, was obvious. Ms. White testified that she and Marvin White used the Road to access their property for decades. The Whites used the Road to transport elk with pick-up trucks and trailers to their ranch property. Mr. Dole testified that prior to 2019, no Defendant interfered with the elk hunts that occurred on the ranch

---

[5] For purposes of determining whether the Doles have established the existence of a prescriptive easement, the Court considers the Whites' use of the Road as "tacked" onto the Doles' use of the road. *Lovvorn v. Salisbury*, 701 P.2d 142, 144 (Colo. App. 1985).

property. Mr. O'Brien similarly testified that he did not complain about the elk hunts that occurred on the Whites' and Doles' ranch property until 2021. And in a June 2021 e-mail to Joe Greene, Mr. O'Brien stated the Whites' hunting traffic that ran across the "historical easement" had "always" been a problem for him (Exhibit 34). Accordingly, the Doles have shown their use of the Road was open and notorious for at least eighteen years. *See Weisiger*, 62 P.3d at 1073.

Second, the Doles must show their use of the alleged easement was "continuous" for at least eighteen years. *See LR Smith*, 378 P.3d at 746. They have met this burden. Considering the Whites' "tacked" use of the ranch property and the Road, *see Lovvorn*, 701 P.2d at 144, Ms. Klaseen testified that Alva and Margaret White had used the Road since 1943. And Ms. White testified that she and Mr. White used the Road to transport elk to the ranch property as early as 1988. Accordingly, the Doles have met their burden of showing their use of the alleged easement was continuous for at least eighteen years. *See LR Smith*, 378 P.3d at 746.

Third, the Doles must show their use of the alleged easement was adverse. *See id.* Because they have satisfied the first two elements, they are entitled to a presumption of adversity. *See id.*; *see also Lo Viento*, 489 P.3d at 741-42. Defendants contend they have rebutted this presumption— and that the Doles cannot show their use was adverse—because their use of the Road was permissive. *See Brown*, 197 P.3d at 249. The Doles argue that their use, as well as their predecessors' use, of the Road was never permissive. The Court agrees.

The gravamen of Defendants' argument is that evidence of a gate across a landowner's road defeats a claim of adverse use and, in this case, the presence of the gate at the Road makes the Doles' use of the Road permissive. However, as the Doles correctly argue, the existence of a gate does not necessarily overcome the presumption of adversity. *See also Brown*, 197 P.3d at 250.

Where a gate is construed for "purposes other than obstruction of public travel," its placement may not establish the use of an easement is permissive. *Id.* (citation omitted). Here, Ms. Klaseen testified that the gate was construed to prevent cattle from going onto the Forest Service property. Moreover, Ms. Klaseen testified that Marvin White placed the "0909" lock on the gate, and gave members of the White family keys to the gate. Ms. White also testified she was "pretty sure" Marvin White gave the O'Briens a key to the "0909" lock he installed on the gate. Although the O'Briens later placed their own combination lock on the gate, this does not establish the Whites' or Doles' use of the Road was permissive. *See* Restatement (Third) of Property (Servitudes) § 2.16 cmt. g (2000). In fact, Mr. O'Brien stated in an e-mail that the "White hunting traffic" had always been a "problem" (Exhibit 34). Accordingly, the Court concludes that the gate that separated the Road from the Forest Service Road does not establish the Doles' use of the Road was permissive.

Defendants next argue they gave implied permission for the Doles and their predecessors to use the Road. The Court disagrees. To show their use was adverse, the Doles must show their use was "without permission or otherwise unauthorized" and that the use "interfered" with the Defendants' property interests. *Lo Viento*, 489 P.3d at 741. Although implied permission may defeat a claim of adverse use, *see LR Smith*, 378 P.3d at 748, there is nothing to indicate the Defendants gave the Doles or their predecessors implied permission to use the Road. The Whites' and Doles' use of the Road clearly interfered with Defendants' property interests—Mr. O'Brien acknowledged as much (*See, e.g.*, Exhibit 34). Ms. White testified that the Whites never asked for permission to use the Road to access their ranch property, and that Defendants and their predecessors never stopped them from using the Road. Mr. O'Brien stated in an August 2021 e-mail to the Doles that he had "historical problems" with Marvin White's "easement *violations*,"

indicating both that the Whites had an easement and that Mr. White did not have Defendants' permission to use the alleged easement for transporting elk (Exhibit 27 (emphasis added)). In contrast to the Doles' use of the Road, Defendants did grant the use of temporary easements to other neighbors on a yearly basis (*See* Exhibit 31). Accordingly, the record indicates Defendants did not grant the Doles or their predecessors implied permission to access and use the Road.

For the reasons set forth above, Defendants have not shown the Doles' use of the Road was permissive. They have failed to disturb the presumption of adverse use. *See Lo Viento*, 489 P.3d at 742. Therefore, at the preliminary injunction stage, the Doles have established a likelihood of success on the merits of showing they have a right to a prescriptive easement across the Road. *See id.*

### B. Irreparable Harm

The Doles must also show they will suffer irreparable harm if a preliminary injunction does not issue. *See Beltronics*, 562 F.3d at 1070. The Doles have met their burden of showing irreparable harm. Without access to the Road, the Doles could not access their property. Although other potential roads that lead to the Doles' property exist, Mr. Dole testified those roads are narrow and steep, and render the transportation of elk and cattle impossible, particularly in inclement weather. Moreover, hearing evidence demonstrates these roads are much more difficult to travel generally compared to the Road. The harm the Doles would suffer if denied access to their property is underscored by the burial of family members on the property. At bottom, without a preliminary injunction the Doles would suffer a certain and imminent harm that is not merely economic. *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005). Accordingly, the Doles have met their burden of showing they will suffer irreparable harm if an injunction does not issue.

### C. Balance of Harms

The Doles must show that the injury they would suffer without a preliminary injunction outweighs the harm Defendants would suffer if an injunction issues. *See Free the Nipple*, 916 F.3d at 797. In balancing the parties' harms, the Court concludes the Doles have met their burden of showing the harm they would suffer without a preliminary injunction outweighs the harms the Defendants would suffer. In reaching this conclusion, the Court considers the Doles' ability to access their ranch property and what, if any, harm Defendants would suffer if the Doles continued to use the Road since purchasing the ranch property from the Whites in 2019. As the Doles argued at the preliminary injunction hearing, the chief harm Defendants identify is the increased traffic along the Road that results from the Doles' use of the Road. The Doles' inability to access their property far outweighs the inconvenience Defendants face from the Doles' continued use of the Road.[6] In fact, Mr. O'Brien did not complain about the Doles' use of the Road until 2021, despite

---

[6] At the preliminary injunction hearing, Defendants argued that the Doles' use of the Road increased the burden placed on the Road relative to the Whites' previous use. This increased use, Defendants argued, amounted to a harmful overburdening of the Road. The Court is not persuaded. Like the Whites, the Doles use the Road to transport cattle and elk to their property. Thus, the Doles use the Road for the same purpose as the Whites. *See Clinger v. Hartshorn*, 89 P.3d 462, 467 (Colo. App. 2003). Moreover, there is nothing to indicate, based on the current record, that the Doles' "increased burden" to the Road is so "substantial" as to warrant an interruption in the Doles' adverse use of the Road *or* a finding at the preliminary injunction stage that Defendants have suffered a harm which would outweigh the Doles'. Mr. O'Brien testified that he never complained about the Doles' use of the easement until 2021. As early as 2000, the Whites had approximately 250 elk on their property, and used the Road to transport those elk to their property. Accordingly, the Whites' and Doles' historical use of the Road does not suggest the Doles' continued use of the road amounts to, or would amount to, an "overburdening" of the Road. Nor does the Court conclude that Defendants demonstrated that the current use is outside the scope of the easement.

the use of the Road for transporting elk for the Whites' and Doles' elk hunts from 2000 through 2021. Accordingly, the Doles have shown this factor weighs in their favor.

### D. The Public Interest

Finally, the Court must ask whether a preliminary injunction would adversely affect the public interest. *See Beltronics*, 562 F.3d at 1070. It would not. As the Doles correctly argued at the preliminary injunction hearing, enforcement of property rights favors the public interest. *See Davilla v. Enable Midstream Partners, LP*, No. CIV-15-1262-M, 2018 WL 1415630, at *2 (W.D. Okla. Mar. 21, 2018) ("There is a strong public interest in the ability of property owners to preserve and maintain their right to control the use of their lands . . . ."). Because the Doles have shown a likelihood of success on the merits of showing they have a property right to the Road, they have also shown the public interest favors a preliminary injunction.

\* \* \*

For the reasons set forth above, the Doles have met their burden of establishing each preliminary injunction factor regarding their prescriptive easement across the Road.[7] Accordingly, issuance of a preliminary injunction is proper. *See Denver Homeless*, 32 F.4th at 1277. Because

---

[7] Throughout the preliminary injunction hearing, Defendants argued the "disfavored" preliminary injunction standard should apply because a preliminary injunction would change the status quo. *See Free the Nipple*, 916 F.3d at 797. The Court disagrees. The Whites and Doles have had access to the Road for decades. Granting the preliminary injunction for the Doles' continued use of the Road does not change this status quo. *See id.*; *see also Schrier*, 427 F.3d at 1258 (stating the purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits is held" (quotations omitted)). The Doles also argued the Court should apply a modified test for the "likelihood of success on the merits" factor. The Tenth Circuit has concluded this modified test is "inconsistent" with the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), and therefore the Court declines the Doles' invitation to apply it. *See Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).

the Doles have met their burden on their prescriptive easement claim, the Court need not at this time address the Doles' argument regarding public access to their ranch property under Revised Statute 2477.

## IV.   Conclusion

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants shall not obstruct or interfere in any way with the use of the Road by the Doles or their lessees, licensees, and/or invitees.

2. Defendants are enjoined from placing or keeping any gate across the Road or any lock that prevents the Doles or their lessees, licensees, and/or invitees from entering, departing on, or otherwise using the Road to access their ranch property.

3. Defendants are enjoined from engaging in any behavior that threatens the Doles or their lessees, licensees, and/or invitees from entering, departing on, or otherwise using the Road to access their ranch property.

This Order dissolves the Temporary Restraining Order currently in effect.

DATED this 5th day of October 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge